

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
**(973) 645-6340**

**WILLIAM J. MARTINI**
   **JUDGE**

**LETTER OPINION**

October 31, 2006

Sidney H. Lehman
Szaferman, Lakind, Blumstein, Blader & Lehman, P.C.
101 Grovers Mill Road, Suite 104
Lawrenceville, NJ 08648
*Attorney for Plaintiff*

Steven W. Kleinman
Scarinci & Hollenbeck, LLC
1100 Valley Brook Avenue
P.O. Box 790
Lyndhurst, NJ 07071
*Attorney for Defendants*

      Re:    Tauriello v. Township of Edison, et al.
               <u>Civil Action No. 05-CV-3983 (WJM)</u>

Dear Counsel:

      This matter comes before the Court on Plaintiff Joseph Tauriello's motion for partial summary judgment or, in the alternative, for a preliminary injunction pursuant to Federal Rules of Civil Procedure 12(c), 56, and 65(a). Also before the Court is Defendants' motion to Compel Specific Performance of the April 6, 2004 Memorandum of Agreement between Plaintiff and Defendant, Township of Edison. Both motions are opposed. For the reasons stated below, Plaintiff's motion is **DENIED**, summary judgement is **GRANTED** sua sponte for Defendants, and the Complaint is **DISMISSED**.

**BACKGROUND**

  Plaintiff was appointed as an Edison Township (the "Township") police officer in 1987 and, pursuant to the relevant New Jersey statutes and a Collective Bargaining Agreement, he attained permanent status in his position. Through leadership positions including the presidency of his local Policemen's Benevolent Association, Plaintiff became an outspoken critic of the leadership and culture at the Edison police department. He cites a series of incidences between May 2000 and February 2003 as a pattern of departmental retaliation against him for this criticism. On May 23, 2003, Plaintiff was formally charged with insubordination and disrespect of his superiors pursuant to an April 2003 incident; after a hearing, he was found guilty and a ten-day suspension was issued on September 19, 2003. He appealed the suspension on November 5, 2003.

  On October 19, 2003, Plaintiff was involved in an off-duty incident in which he was accused of assault and filing a false report. On April 1, 2004, following psychological evaluations, Edison Police Chief, Edward Costello, Jr., requested that Plaintiff submit to involuntary retirement with a May 1, 2004 retirement date.

  On April 6, 2004, Plaintiff, with attorney and union representation, and Edison Township entered into a Memorandum of Agreement ("MOA") which provided that the Township would apply for, and Plaintiff agreed to accept, an involuntary disability pension; if such a pension was denied, Plaintiff agreed to file for ordinary retirement. The terms of the MOA also required that Plaintiff withdraw his appeal of the May 23, 2003 disciplinary charge, and acknowledge that probable cause existed for all disciplinary charges. The Township agreed to dismiss any other charges against Plaintiff and to close all pending investigations and disciplinary matters.

  Pursuant to the MOA, Plaintiff withdrew his appeal of the May 23, 2003 disciplinary charge and, on April 19, 2004, the Township filed an involuntary disability application on behalf of Plaintiff. On April 24, 2004, Plaintiff received a letter from the State of New Jersey Department of Treasury informing him of the Township's filing.

  On June 11, 2004, the Township filed disciplinary charges against Plaintiff related to the October 2003 incident; Plaintiff's attorney responded to the charges by letter dated June 14, 2004 but did not at that point assert that the Township's charges breached the MOA. A hearing was never scheduled and these charges were not pursued by the Township.

  By letter dated November 9, 2004, the Township was informed that Plaintiff's disability retirement was denied. On November 12, 2004, the Township informed Plaintiff in writing of this denial and requested that Plaintiff move to file for service retirement by November 19, 2004, pursuant to the MOA.

  Plaintiff did not so file and in a December 2, 2004 letter, The Township informed Plaintiff that he was removed from payroll effective the same date. Plaintiff responded through his attorney in a December 30, 2004 letter that his removal from payroll was illegal and

demanded immediate return to full pay status. This letter also asserted that the Township's filing of the June 11th disciplinary charges violated the MOA. Finally, Plaintiff stated that any application on his part for retirement benefits should not be seen as a waiver of his position that he was entitled to return of full pay status retroactive to December 2, 2004. To that end, on March 14, 2005, Plaintiff's retirement application was approved effective February 1, 2005.

On June 8, 2005, Plaintiff filed the Complaint in New Jersey Superior Court. On August 11, 2005, Defendants removed the Complaint to this Court pursuant to 28 U.S.C. § 1441, 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

The Complaint holds Six Counts as follows:

Counts I and III are brought under 42 U.S.C. § 1983 alleging Due Process violations related to his dismissal and free speech and association violations related to his activities at the Policemen's Benevolent Association;

Counts II, IV and VI allege wrongful termination, breach of contract and negligence related to his termination;

Count V alleges intentional infliction of emotional distress.

Plaintiff seeks reinstatement to the Edison police force and compensatory damages including, but not limited to, back pay, punitive damages and fees.

Plaintiff filed his motion for partial summary judgment or, in the alternative, preliminary injunctive relief on December 2, 2005 alleging that, regardless of the MOA, he has a due process property interest in his employment precluding his removal without a hearing. He further seeks an order that he be reinstated with back pay until the final adjudication of this litigation.

Defendants filed their motion to compel specific performance of the MOA on December 2, 2005. The Court heard oral arguments on February 15, 2006 and on February 27, 2006 granted Defendant's oral application to amend their Answer to include a separate defense asserting that their entitlement to specific performance of the MOA renders the Complaint moot.

**DISCUSSION**

**I.** **Standard for Summary Judgment Pursuant to Rule 56**

Summary judgment eliminates unfounded claims without recourse to a costly and lengthy trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). However, summary judgment is only appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *See Fed. R. Civ. P. 56*. Rule 56(e) requires that when a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The mere existence of some alleged factual dispute between the parties

3

will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See Anderson*, 477 U.S. at 247-48. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Furthermore, the weight of authority supports a court's sua sponte grant of summary judgment for a non-moving party "where a legal issue has been fully developed, and the evidentiary record is complete." *See Gibson v. Mayor and Council of the City of Wilmington*, 355 F.3d 215, 224 (3d Cir. 2004); *Hassan v. Frost*, Civ. A. No. 88-874, 1989 WL 201017 at *6 (D.N.J. 1989); 10A Charles Alan Wright, Arthur R. Miller & Mary Kane, Federal Practice and Procedure § 2720 at 347 (3d ed. 1998).

## II.     Standard for Contract Interpretation

"The interpretation or construction of a contract is usually a legal question for the court, suitable for a decision on a motion for summary judgment." *Driscoll Construction Co., Inc. v. N.J. Dept. of Transp.*, 853 A.2d 270, 276 (N.J. Super. Ct. App. Div. 2004)(internal citations omitted). *Accord Smithkline Beecham Corp. v. Rohm and Haas Co.*, 89 F.3d 154, 159 (3d Cir. 1996); *Avatar Bus. Connection Inc. v. Uni-Marts, Inc.*, No. Civ.A.04-1866, 2005 WL 3588482 at *8 (D.N.J. Dec. 29, 2005).

It is hornbook law that "a contract should be interpreted so as to give meaning to all its terms." *John F. Harkins Co., Inc. v. Waldinger Corp.,* 796 F.2d 657, 667 (3d Cir. 1986); Restatement 2d, Contracts § 203(a). Furthermore, when interpreting a contract, "the court's goal is to ascertain the intention of the parties to the contract as revealed by the language used, taken as an entirety; and, in the quest for intention, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain." *Driscoll*, 853 A.2d at 276 (internal citations omitted); *Avatar*, 2005 WL 3588482 at *8. Finally, "a court may consider extrinsic evidence of surrounding circumstances to ascertain the intended meaning of the parties" as to the contract. *Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.*, 180 F.3d 518, 522 (3d Cir. 1999).

## III.    Plaintiff's Motion for Partial Summary Judgment or, in the Alternative, for a Preliminary Injunction is DENIED and Summary Judgment is GRANTED Sua Sponte in Favor of Defendants

Plaintiff makes two basic claims. Firstly, he argues that he has certain rights in his employment that were not terminated by the MOA. Secondly, he asserts that his removal from the police force, regardless of the MOA, was improperly executed. However, as the Court will explain below, when Defendant signed the MOA, he waived certain rights he may have had relating to his termination. In addition, Defendants were well within the parameters of the MOA in removing Plaintiff from the Township payroll after he failed to retire as per the MOA.

### A. The MOA Waived Any Due Process Rights Defendant May have had Relating to His Termination by the Township

Plaintiff contends that, under N.J.S.A. 40A:14-147 and 40A:14-128 he acquired a right to indeterminate and continued employment and that he could not be removed from his position or the Township payroll without adherence to the procedures, including complaint and hearing, as outlined in 40A:14-147. "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Perry v. Sinderman,* 408 U.S. 593, 601 (1972)(*citing Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).) However, just as due process rights in an interest may be created by 'mutually explicit understandings,' due process rights granted under such understandings may likewise be waived through explicit mutual agreement.

Indeed, the rule in the Third Circuit is that "constitutional rights, like rights and privileges of lesser importance, may be contractually waived where the facts and circumstances surrounding the waiver make it clear that the party foregoing its rights has done so of its own volition, with full understanding of the consequences of its waiver." *Erie Telecommunications, Inc. v. City of Erie, Pa.*, 853 F.2d 1084, 1096 (3d Cir. 1988). The *Erie* court further outlined that such volition and understanding are deemed to be present "where the parties to the contract have bargaining equality and have negotiated the terms of the contract, and where the waiving party is advised by competent counsel and has engaged in other contract negotiations." *Erie*, 853 F.2d at 1096.

The MOA presents precisely such a waiver. By signing the MOA, Det. Tauriello agreed to either accept an involuntary disability pension or, barring the grant of such pension, to retire of his own accord under ordinary retirement procedures. (MOA ¶1, 5-6.) By accepting these retirement procedures in the MOA, he waived any due process rights he may have had in his termination proceedings. *See Boody v. Township of Cherry Hill*, 997 F.Supp. 562, 570-71 (D.N.J. 1997); *Leheny v. City of Pittsburgh*, 183 F.3d 220, 227 (3d Cir.1999).

Plaintiff's attorney and union were present at the signing, and neither party contends that the MOA was improperly executed. (Plaintiff's Brief and Statement of Material Facts in Support of Motion for Summary Judgment of, in the Alternative, Preliminary Injunctive Relief ("Pl. MSJ Brief") at 9; Certification of Jonathan A. Capp ("Capp Cert.") ¶8.) Absent coercion, duress, deception, or misrepresentation of a material fact, the Tauriello's agreement to the retirement procedures of the MOA are assumed to be valid. *Leheny*, 183 F.3d at 227-28. Again, neither party has challenged the valid execution of the MOA; therefore it is assumed to have been valid.

### B. Township was Proper to Remove Plaintiff from Payroll when Plaintiff Failed to Retire Pursuant to the MOA

Plaintiff contends that although the MOA clearly states that he would retire pursuant to its terms, he was under no obligation to retire and it was improper for the Township to use "self help" and remove him from its payroll. (Pl. MSJ Brief at 39-45.) However this argument both relies upon due process rights in Plaintiff's termination that he waived under the MOA, and contradicts Plaintiff's agreement under the MOA to retire. (*See, e.g. id*. at 40.)

Paragraph six of the MOA states that "in the event an involuntary disability is not granted, Tauriello *will file* for an ordinary retirement . . ." (MOA ¶6.) This language plainly conveys that Tauriello had no choice but to retire promptly once involuntary disability was denied, and the Court cannot read the MOA without giving effect to this clause. By failing to so file, Plaintiff would have had the Township rest in the impossible limbo of continuing to pay him until he chose to file his retirement paperwork at any date in the future, even though the MOA clearly outlines that he was to file for retirement at the time his disability pension was denied. By not following through on his responsibilities under the MOA and actively moving for retirement, Plaintiff breached the MOA and put the Township in an impossible position that the Township was within its rights to remedy. *See, e.g., Espinosa v. County of Union et al.*, No. 01-CV-3655, 2005 WL 2089916 at *2 (D.N.J. Aug. 30, 2005). Therefore, the Township, after first requesting that Defendant file his retirement paperwork, properly removed him from their payroll.

### C. Defendants did not Breach the MOA's Release of Pending Investigations

Plaintiff contends that he was released from any obligation to retire because Defendants breached the MOA when they filed disciplinary charges in June 2004 related to the October 2003 incident. This interpretation, however, contradicts both the parties' apparent intentions in signing the MOA and the express terms of the MOA.

In interpreting the MOA's terms, and Defendants' alleged breach, the Court is informed by Plaintiff's situation surrounding execution of the MOA. At that time, Plaintiff was aware that he was at risk of forcible termination. On numerous occasions, Plaintiff had been referred to the Institute of Forensic Psychologist ("IFP") for psychological testing stemming from his behavior. (Capp. Cert. ¶3.) On at least three separate evaluations the IFP psychological report indicated that Plaintiff's continued behavior may lead to termination (with two of these reports recommending he be stripped of his weapons). (Feb. 4, 1996 IFP Report at 13; Jan. 7, 1998 IFP Report at 22; May 15, 2003 IFP Report at 18-19.)

Indeed the December 3, 2003 final IFP report is crystal clear in its conclusion that:

1. Officer Tauriello is not fit for duty.
2. Officer Tauriello represents a danger to himself and to others.
3. Officer Tauriello may not any longer have possession of his weapons.

>            4.  Officer Tauriello should seriously be considered for immediate
>                termination by his department.

(Dec. 3, 2003 IFP Report at 17.)

Moreover, Plaintiff was certainly aware that his behavior might be considered just cause to terminate him under the strictures of N.J.S.A. 40A: 14-147; indeed Plaintiff repeatedly cites 40:14-147 to the Court in his briefs.  (*See, e.g.* Pl. MSJ Brief at 22.).  Section 40A:14-147 provides that police officers are not to be "removed, fined, or reduced in rank from or in office, employment, or position therein, except for just cause."  N.J.S.A. 40A: 14-147.  Just cause is defined as "incapacity, misconduct, or disobedience." *Id.*; *Scully v. Borough of Hawthorne*, 58 F.Supp.2d 435, 442 (D.N.J. 1999).  Finally, Plaintiff's affidavit confirms his fear of being terminated as a result of the October 2003 incident.  (Certification of Joseph Tauriello ("Tauriello Cert.") ¶27.)

It was in this context that Plaintiff signed the MOA allowing him to retire in good standing, as opposed to being forcibly terminated; Defendants would likewise receive the benefit of Tauriello's withdrawing his appeal of the May 23, 2003 disciplinary proceedings and be able to ease Tauriello out of his position without lengthy proceedings while still maintaining their rights to initiate new proceedings if necessary.

Paragraphs three and four of the MOA define a two-tier relationship between Tauriello and the Township in any post-MOA disciplinary proceedings against Plaintiff with paragraph three outlining the Township's ability to bring post-MOA proceedings against Tauriello, and Tauriello admitting that legitimate cause existed for all disciplinary charges, writing that:

> "*Tauriello acknowledges and agrees that probable cause exists for all disciplinary charges*, including those that will be closed or dismissed as a result of this agreement.  *Nothing herein shall prohibit the use of these charges in any future proceedings* involving the Township of Edison or any of its employees.  Otherwise the use of these charges or any evidence obtained through the investigation of these charges will remain confidential."

(MOA ¶3)(emphasis added.)

Paragraph four of the MOA then requires that the Township close all *pending* matters against Plaintiff writing that "[t]he Township agrees to dismiss any other charges against Tauriello and all *pending investigations or disciplinary matters* will be closed." (MOA ¶4)(emphasis added.)

Plaintiff contends that the Township breached these paragraphs, and the MOA, when it filed the June 11, 2004 charges related to the October 2003 incident.  (Pl. MSJ Brief at 11.) Defendants reply, and the Court agrees as a matter of law, that the clear terms of the MOA only

required that the Township close any already pending investigations and disciplinary matters. At the time that Plaintiff signed the MOA, no disciplinary charges had been filed in relation to the October 2003 off-duty incident. And as outlined in MOA paragraph three, nothing in the MOA would preclude the Township from instituting any future proceedings relating back to incidents, or past investigations, that took place before the MOA. (MOA ¶3.)

Indeed, the June 11, 2004 charges were the first filed as a response to the October 2003 incident and were, therefore, allowed under paragraphs three and four of the MOA. (Reply Brief in Support of Defendant's Motion to Compel Specific Performance ("Def. MTC Reply") at 1-3.) Furthermore, Defendants argue, and the Court agrees, that filing charges at that time was the only way under N.J.S.A. 40A:14-147 to preserve their right to later prosecute those charges, if necessary. (*Id.* at 4-6.) N.J.S.A. 40A:14-147; *Aristizibal v. City of Atlantic City*, 882 A.2d 436, 449-50 (N.J. Super. Ct. Law Div. 2005)(for the purposes of N.J.S.A. 40A:14-147, charges must be brought within 45 days of the party filing the complaint's obtaining sufficient information to bring such charges). Finally, despite filing and preserving their right to pursue charges related to the October 2003 off-duty incident, Defendants demonstrated their good faith by never pursuing the June 11, 2004 charges and allowing Plaintiff's ordinary retirement. (Def. MTC Reply at 4.)

Moreover, it does not appear from Plaintiff's behavior at the time that he viewed the filing of the June 11, 2004 charges as breaching the MOA when they were initially filed. Likewise, Plaintiff did not argue breach until his possible disability retirement with accompanying benefits was denied. Indeed, when the June 11, 2004 charges were filed, despite communications from his attorney regarding his defense of those charges, Plaintiff never asserted breach of the MOA. (June 14, 2004 Laurence Y. Bitterman letter.) It appears that the first time Plaintiff claimed breach from the June 11, 2004 charges was in a December 30, 2004 letter from his attorney responding to the Township's removal of Plaintiff from payroll. (Dec. 30, 2004 Sydney H. Lehmann letter.)

### D. Defendants did not Breach the MOA's Confidentiality Provision

In his reply to Defendants' Motion to Compel, Plaintiff also alleges that Defendants breached MOA paragraph three when they set forth details about Tauriello's October 2003 behavior in filing the June 11, 2004 charges. This is clearly incorrect. The pertinent section of paragraph three plainly states "[n]othing herein shall prohibit the use of these charges in any future proceedings involving the Township of Edison or any of its employees. Otherwise the use of these charges or any evidence obtained through the investigation of these charges will remain confidential." (MOA ¶3.) As described above, the township's June 11, 2004 charges were new, and therefore excluded from paragraph three's confidentiality strictures. More significantly, nothing in the record indicates that the facts of the October 2003 incident were in any way publicized beyond their inclusion in the June 11, 2004 charges. Therefore, Plaintiff's motion for partial summary judgment that his due process rights were violated must be **DENIED.**

### E. The Court GRANTS Summary Judgment Sua Sponte in Favor of Defendants

In reviewing the submissions and oral argument on Plaintiff's motion for partial summary judgment, it is clear that the legal issues as to the waiver of due process rights and breach of contract have been fully developed, and the evidentiary record is complete. As explained above, the Court believes all these issues favor the Defendants as a matter of law. Likewise, in ruling that the MOA controls, Plaintiff's admission in MOA paragraph three that "probable cause exists for all disciplinary charges, including those that will be closed or dismissed as a result of this agreement," renders the remainder of the Complaint moot. (MOA ¶3.) Therefore, it is appropriate now for the Court to **GRANT** summary judgment *sua sponte* in favor of Defendants and **DISMISS** the Complaint in its entirety. *See Gibson*, 355 F.3d at 224.

### IV. Defendant's Motion to Compel Specific Performance of the MOA is Moot

The Court's ruling that the MOA is enforceable as a matter of law renders Defendant's motion to compel moot in two different regards. Firstly, the motion to compel seeks a declaration by the Court that the MOA is valid and enforceable. (Def. Motion to Compel Specific Performance ("MTC") at 12.) As explained above, the Court has already determined the MOA to be enforceable in granting summary judgment against Plaintiff.

Secondly, Defendants ask the Court to order Plaintiff to abide by the full terms of the MOA. As presented to the Court, Plaintiff is currently in full compliance with the MOA. The only two affirmative acts the MOA finally required of Plaintiff were dismissal of his appeal of the May 23, 2003 disciplinary charges and his filing for ordinary retirement. (MOA ¶¶2, 6.) It is uncontested that Plaintiff withdrew his appeal of the May 23, 2003 charges. (Pl. MSJ Brief ¶9.) Likewise, both parties agree that Plaintiff was granted ordinary retirement effective February 1, 2005. (Ex. J to Cert. of Jonathan Capp; Pl. MSJ Reply Brief ¶¶16-17.) Therefore, it appears to the Court that Plaintiff is currently in full compliance with the MOA, and Defendant's motion to compel is therefore moot.

### CONCLUSION

In summary, and as a matter of law, the MOA is a valid and enforceable agreement that has not been breached by Defendants. Therefore, the Court **DENIES** Plaintiff's motion for partial summary judgment, **GRANTS** summary judgment *sua sponte* in favor of Defendants, and **DISMISSES** the Complaint in its entirety.

An appropriate Order accompanies this Letter Opinion.

s/William J. Martini
_____
**William J. Martini, U.S.D.J.**
