# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## <u>LETTER OPINION</u>

June 3, 2010

Sidney Howard Lehmann
Zazzali, Fagella, Nowak, Kleinbaum & Friedman
150 West State Street
Trenton, NJ 08608

    (*Attorney for Plaintiff Joseph Tauriello*)

Mitchell B. Jacobs, Ramon E. Rivera and Steven W. Kleinman
Scarinci & Hollenbeck, LLC
1100 Valley Brook Avenue
P.O. Box 790
Lyndhurst, NJ 07071

    (*Attorneys for Defendants*)

    **RE:**   **Tauriello v. Township of Edison**
           **Civ. No. 05-3983 (WJM)**

Dear Counsel:

    This action is before the Court on remand from the Third Circuit Court of Appeals, following Plaintiff Joseph Tauriello's appeal from this Court's October 31, 2006 order granting summary judgment *sua sponte*, prior to the parties taking any depositions or interrogatories.  The parties have since engaged in discovery and have had the opportunity to more fully develop the record in this case.  Presently before the Court are two motions.

Defendants Township of Edison, Jonathan A. Capp, Edward Costello, George Mieczkowski, Ronald Gerba, and Angelo Bekiarian[1] move for summary judgment. Plaintiff Joseph Tauriello also moves for partial summary judgment.  This Court has carefully reviewed the parties' submissions for both motions.  For the reasons stated below, Defendants' motion will be **GRANTED** and Plaintiff's motion will be **DENIED**.

## I.      BACKGROUND

Plaintiff was a police officer for the Township of Edison.  He worked in law enforcement for over 20 years[2] and served as President of Edison's Police Benevolent Association ("PBA") several times.  Compl., p. 3.  On October 19, 2003, he got into a physical altercation (the "October 19 Incident") with his wife's ex-husband and as a result, faced assault charges in municipal court.  Defs. Jan 5, 2010 Br., p. 15.  On April 6, 2004, with the threat of serious disciplinary action looming, Plaintiff entered into a Memorandum of Agreement ("MOA") with Defendant Township of Edison (the "Township").  Under the terms of the MOA, Tauriello acknowledged that probable cause existed for all disciplinary charges brought by the Edison Division of Police, and the Township agreed to close "all pending investigations or disciplinary matters" and file for involuntary disability retirement on Tauriello's behalf.  *Id*. at Ex. G.  Because there was no guarantee that Plaintiff's involuntary disability retirement application would be granted, the MOA further stated that if that application was denied, Plaintiff would file for ordinary retirement.  *Id*. The Township filed the disability retirement application on behalf of Plaintiff shortly thereafter, but it was not denied until November 8, 2004.  *Id*.

On April 29, 2004, the assault charges in municipal court were dismissed.  *Id*. at Ex. I.  Thereafter, on June 11, 2004,[3] the Edison Police Department served Plaintiff with notice that he now faced departmental disciplinary charges stemming from the October 19 Incident and set a preliminary date for Plaintiff's departmental hearing.  *Id*. at Ex. J. Plaintiff's attorney at that time, Lawrence Bitterman, sent a letter in response to this notice, indicating that Plaintiff planned to appear at the hearing, requesting relevant documents and proposing an alternative date for the hearing.[4]  *Id*. at Ex. K.  As far as the

---

[1] All Defendants in this matter, excluding the Township, were employees of the Township of Edison at the time the incidents giving rise to lawsuit occurred.

[2] He served with the Edison Police Department for 17 years.

[3] To be clear, as of this date, the MOA was already in effect, and Plaintiff's involuntary retirement application was still pending.

[4] In this letter, counsel makes no mention that the Township is in breach of the MOA.

2

record indicates, there was no further correspondence between Plaintiff and the Edison Police Department regarding this hearing until after Plaintiff was removed from the Township payroll on December 2, 2004.  No hearing was ever held and the charges were dismissed.[5]

After learning that Plaintiff's involuntary pension application was denied, the Township sent Plaintiff a letter on November 12, 2004 requesting that he file for ordinary retirement pursuant to the MOA.  Plaintiff did not comply with this request and ultimately, the Township removed him from its payroll on December 2, 2004.  *Id*. at Ex. M.  Plaintiff's present attorney, Sidney H. Lehmann, sent a letter to Township of Edison's personnel department on December 3, 2004 regarding the status of Plaintiff's employment, and followed up with another letter on December 30, 2004, after receiving no response to the first letter.  Eventually, Plaintiff filed for ordinary retirement and that application was approved.  *Id*. at Ex. B.  It is undisputed that Plaintiff had a property interest in his position as a police officer and in the absence of an agreement to the contrary, Plaintiff could not be removed from the Township payroll without first having a pre-termination hearing.

Plaintiff filed a six-count complaint in Superior Court that was removed to District Court on August 11, 2005.  This Court granted summary judgment *sua sponte* in favor Defendants, finding the MOA to be an enforceable contract that was not breached when departmental disciplinary charges were filed against Plaintiff in June, 2004.[6]  Plaintiff appealed this decision to the Court of Appeals for the Third Circuit, which found the MOA's language ambiguous, and that it was reasonable for Plaintiff to interpret Edison Police Department's filing of disciplinary charges as a breach of the MOA.  The Third Circuit further held that on the limited record before this Court, granting summary judgment was inappropriate, but also noted that summary judgment would still be appropriate if this Court found that the breach was not a material one, and remanded the

---

[5] No party has offered a sufficient explanation for why written communication between the parties lapsed and why no hearing was held, but it is clear that under New Jersey law, failure to hold a hearing within 30 days from date of service of the notice ensured dismissal of those charges.  N.J.S.A. 40A:14-19; *see also Tauriello v. Township of Edison*, 288 Fed.Appx. 825 (3d Cir. 2008); and *King v. Ryan*, 621 A.2d 68 (N.J.Super.A.D., 1993) *cert. denied King v. Borough of South Bound Brook*, 134 N.J. 474 (1993).

[6] This Court further held that Plaintiff, by agreeing to file for voluntary retirement in the event involuntary retirement was not granted, waived certain due process rights he would have otherwise had for a pre-termination hearing.

case for further proceedings. Since remand, the parties have engaged in discovery and have had sufficient opportunity to more fully develop the record.

## II.    DISCUSSION

Before the Court now are Plaintiff's and Defendants' motions for summary judgment.

### A.    Summary Judgment Standard

Summary judgment is appropriate if review of "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact" and that judgment is appropriate as a matter of law. Fed. R. Civ. P. 56(c). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). When evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976).

### B.    Determining Material Breach

In the opinion which remanded this case, the Third Circuit found the language of the MOA to be ambiguous. *Tauriello v. Township of Edison*, 288 Fed.Appx. 825 (3d Cir. 2008). Although it is generally true "that if the relevant terms in a contract are ambiguous, the issue must go to a jury",[7] the Third Circuit further stated that in this case, summary judgment would still be appropriate if the Township could establish that any breach it committed was not material.[8] *Id.* A breach is material when it goes to the essence of the contract and "will deprive the injured party of the benefit it justifiably expected" from performance under the contract. *General Motors Corp. v. New A.C. Chevrolet, Inc.* 263 F.3d 296, 315 (3d Cir. 2001) (citing *Farnsworth on Contracts* § 8.16

---

[7] *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 163, (3d Cir. 2001).

[8] This comports with Third Circuit precedent that although generally, whether a breach is material is a factual issue, there are circumstances where determination of the issue of material breach at the summary judgment stage is appropriate. *Norfolk Southern Ry. Co. v. Bassel USA Inc.*, 512 F.3d 86, 92-93 (3d Cir. 2008).

at 495-97).  If in filing disciplinary charges, the Township committed a material breach, Plaintiff would have the option to terminate the agreement in its entirety.  *Id.* at  n.5.  However, if the breach was non-material, the termination option would not be open to Plaintiff, and he would still be bound by the MOA's terms.  *Id*.

In determining whether a breach is material, the *Restatement of Contracts* § 241 (2d ed. 1981) instructs that the following circumstances should be considered:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

These materiality factors are "to be applied in the light of the facts of each case . . . ."  *Id*. at § 241 cmt a. No single factor is dispositive.  *Norfolk Southern Ry. Co. v. Bassel USA Inc.*, 512 F.3d 86, 92 (3d Cir. 2008).

## C.    Defendants' Summary Judgment Motion

In their brief in support of summary judgment, Defendants first argue that the Township did not breach the terms of the MOA because the unambiguous language of the MOA made it permissible to file *new* disciplinary charges against Plaintiff for conduct related to the October 19 Incident.  Defs. Jan 5, 2010 Br., p. 15 (emphasis added).  This argument must fail.  As the Third Circuit made clear, the language of the MOA is ambiguous.  For purposes of Defendants' summary judgment motion, this Court will construe all facts in the light most favorable to Plaintiff and will construe the terms of the MOA as Plaintiff understood them to be:  Namely, that signing the MOA would lay to rest all disciplinary issues relating to the October 19 Incident and that no further charges

5

could be brought.[9]  *Id*. at Ex G., Dep. of Joseph Tauriello, p. 123-126.  Therefore the Township breached the terms of the MOA when it subsequently filed disciplinary charges relating to the October 19 Incident and served Plaintiff with notice of the same. However, when looking at all of the facts in this present case, service of notice of a tentative hearing date by the Township, by itself, was not a breach of the MOA that went to the essence of the contract to deprive Plaintiff of the benefit he justifiably expected:  It did not relieve Plaintiff of his obligation to file for the ordinary retirement once his involuntary retirement application was denied.

As noted earlier, whether a breach is material must be decided in light of the facts of each case.  The *Restatement* lists five factors for a court to consider when making this determination.  The first, which focuses on deprivation of the "benefit" bargained for,[10] strongly cuts against the breach being material.  Plaintiff's expected benefit was that he could put the October 19 Incident behind him and would not face any future disciplinary charges related to that event.  Ultimately, this is the benefit Plaintiff received.  As Plaintiff understood it, the Township breached the MOA when it served him with notice that he faced new charges related to the October 19 Incident.  Plaintiff went so far as to have his attorney write the Township to schedule a hearing.  However, this is as far as the matter went.  No further written communication regarding the hearing took place.  For whatever reason, a hearing was never held.  Whether purposefully or by accident, the Township ceased pursuit of new disciplinary charges, and the charges were dismissed. Pursuant to New Jersey law, the Township lost its ability to pursue new charges well before Plaintiff's involuntary retirement application was rejected.  While the Township would have been well served to affirmatively state in writing that it was no longer pursing charges, for all practical purposes, it lost the right to pursue charges when it failed to respond to Lawrence Bitterman's June 14, 2003 letter.  In other words, Plaintiff did not lose the benefit he bargained for.  Moreover, because Plaintiff got the benefit he bargained for, the second *Restatement* factor - which focuses on compensation for a lost benefit - is irrelevant to the present analysis.

For the reasons explained above, this Court is satisfied that Plaintiff was no longer threatened with new disciplinary charges at the time his obligation to file for ordinary retirement came due.  Accordingly, the fourth *Restatement* factor - the likelihood that the party failing to perform will cure his failure - also supports the the Township's filing of

---

[9] Plaintiff testified that he understood the Township's responsibilities under the MOA to be "to dismiss all charges and investigations that were ongoing against me . . ."  Dep. of Joseph Tauriello, p. 123.

[10] *Norfolk Southern* at 93.

new charges being a non-material breach.  In failing to hold a hearing and ceasing communication with the Plaintiff regarding the status of his hearing entirely, the Township cured its breach going forward.

The third *Restatement* factor considers the extent to which the breaching party will suffer if the non-breaching party is permitted to not perform.  At the time Plaintiff's obligation to file for ordinary retirement came due in November, the Township had already met its obligations under the terms of the MOA.  Because Plaintiff already received the benefit he bargained for, it is fundamentally unfair to permit Plaintiff to not perform.  Finally, looking to the fifth factor - the extent to which the breaching party's behavior comported with standards of good faith and fair dealing - the record does not suggest that the Township was acting in bad faith when serving Plaintiff with notice of a disciplinary hearing.

Taking all these factors together, this Court finds that the Township did not materially breach the terms of the MOA, and Plaintiff was bound by its terms.  Accordingly, Defendants' motion for summary judgment that an enforceable contract existed requiring Plaintiff to file for ordinary retirement will be granted.

### D.    Plaintiff's Constitutional Claims

This Court now turns to Plaintiff's motion for partial summary judgment that his procedural due process rights were violated when he was removed from the Township payroll on December 2, 2004.  It is undisputed that Plaintiff, as a police officer, had a State-recognized constitutional property interest in continued employment that would ordinarily entitle him certain due process protections outlined in N.J.S.A. 40A:14-147. Def.'s Feb 1, 2010 Reply Br., p. 6; *see also Perez v. Cucci*, 725 F. Supp. 209, 241 (D.N.J. 1989).  Moreover, it is undisputed that Plaintiff signed the MOA on April 6, 2004. Plaintiff claims that his due process rights were violated when Plaintiff was removed from the Township payroll on December 2, 2004 without a pre-termination hearing.  Pl.'s Feb 8, 2010 Reply Br., p. 1.

Under the terms of the MOA, Plaintiff agreed to either accept an involuntary disability pension or, barring the grant of such pension, to retire of his own accord under ordinary retirement procedures.  There is no circumstance contemplated in the MOA whereby Plaintiff would remain an active police officer.  Accordingly, Plaintiff's decision to retire became effective once he signed the MOA, and Plaintiff therefore lost any due process rights he had in his position as a police officer on April 6, 2004.  *See Leheny v. City of Pittsburgh*, 183 F.3d 220, 228 (Police officers no longer had due process rights in their positions where they signed agreement to be retired within the next three years, four

months before receiving letter they claimed coerced them into retiring).  As such, Plaintiff had no due process rights that Defendants could violate when they removed him from their payroll on December 2, 2004.

Even assuming, *arguendo*, that the MOA is not sufficient to finalize Plaintiff's intention to retire, the MOA is still an effective waiver of Plaintiff's due process rights. "[C]onstitutional rights . . . may be contractually waived where the facts and circumstances surrounding the waiver make it clear that the party foregoing its rights has done so of its own volition, with full understanding of the consequences of its waiver." *Erie Telecommunications, Inc. v. City of Erie*, 853 F.2d 1084, 1096 (3d Cir. 1988).   On the facts in this case, this Court is satisfied that Plaintiff understood the consequences of signing the MOA.  Plaintiff stated that he did not discuss the MOA with an attorney prior to signing it, but he did discuss it with a delegate of his union. Def.'s Jan 5, 2010 Br., Ex G., Dep. of Joseph Tauriello, p. 107.  Moreover, during the time period when he contemplated signing the MOA, he was represented by counsel. *Id*. at P. 107-108. Furthermore, Plaintiff was an experienced police officer who served several terms as President of his PBA and had at least some familiarity of disciplinary proceedings. Plaintiff knew that by signing the MOA, he would no longer serve as a police officer in the Edison Police Department.  In accepting the retirement procedures set out in the MOA, Plaintiff waived any due process rights to have additional pre-termination proceedings. *See Boody v. Township of Cherry Hill* 997 F.Supp. 562, 570-71 (D.N.J. 1997).  Accordingly, Plaintiff's motion for partial summary judgment that his due process rights were violated will be denied.

Plaintiff also claims that his termination was in retaliation for his actions as PBA president, in violation of his rights of freedom of speech and freedom of association. Compl., p. 12.  As explained *supra*, the MOA was both a binding contract and the instrument by which employee retired.  Absent coercion, duress, deception, or misrepresentation of a material fact, there is no reason to overturn the presumption that the MOA, and the terms therein, are valid. *Leheny* at 227-28.  Plaintiff has not presented evidence to overcome this presumption.  Under the MOA's terms, Plaintiff acknowledged that probable cause existed for all disciplinary charges he faced.  Having agreed that the Township could validly pursue disciplinary charges and that he would retire to put those charges to rest, Plaintiff cannot now claim the charges that led to his removal from the payroll were in retaliation for his actions as PBA president and in violation of his constitutional rights.  Accordingly, these claims will be dismissed.

### E.   Township Properly Removed Plaintiff from Its Payroll

Having determined that Plaintiff was bound by terms of the MOA, and that by agreeing to its terms, he agreed to retire and waived any due process rights he would otherwise have in his position, this Court finds that the Township, after first requesting that Plaintiff file his retirement paperwork, properly removed him from their payroll. Plaintiff did not follow through on his responsibilities under the MOA and put the Township in an impossible position.  *See, e.g. Espinosa v. County of Union*, No. 01-CV-3655, 2005 WL 2089916 at *2 (D.N.J. Aug. 30, 2005).  Therefore, the Township was within its rights to remedy this situation by removing Plaintiff from its payroll.  *Id*.

### G.   Plaintiff's Intentional Infliction of Emotional Distress Claim

Finally, Plaintiff alleges that Defendants' conduct was extreme, outrageous and done with the intention to inflict emotional distress upon Plaintiff.  To prevail on this claim, a Defendants alleged "conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Buckley v. Trenton Saving Fund. Soc.*, 111 N.J. 355, 366 (1988).  Initiating proceedings that ultimately led to Plaintiff's removal from the Edison Police after Plaintiff was involved in a public physical altercation is not conduct that will meet this high threshold.  *See Lada v. Delaware County Community College*, No. 08-4754, 2009 WL 3217183, at * 11 (E.D.Pa. Sept.30, 2009) (terminating employee is not outrageous conduct which provides a basis for recovery under the tort of intentional infliction of emotional distress).  On the record before this Court, Plaintiff has not stated facts to create a prima facie claim of intentional infliction of emotional distress, and accordingly, this claim will also be dismissed.

## III.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED** and Plaintiff's motion for partial summary judgment is **DENIED**.  An order follows this Letter Opinion.


/s/   William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

9